The undersigned have reviewed the prior Opinion and Award upon the record of the proceedings before Deputy Commission Jones and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. The Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a pre-trial agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Sterling Risk Management is the carrier on the risk.
4. A Form 22 Statement of Days Worked and Earnings of Injured Employee was submitted from which an average weekly wage may be determined.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of documentation from Dale Caughey, M.D., Murray Seidel, M.D., New Hanover Regional Medical Center Radiology, and Pro Active Physical Therapy.
6. The issues before the Commission are: (i) whether plaintiff sustained an injury by accident while working for defendant-employer; and (ii) if so, what compensation, if any, is due plaintiff?
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 60 years old and had completed high school and one year of college.
2. Plaintiff began working for defendant-employer in the spring of 1998 as a painter for an apartment complex in Wilmington, North Carolina. Plaintiffs normal job duties were painting, spackling, and general cleaning of apartments. In his employment plaintiff regularly transported supplies and equipment, including a paint sprayer, buckets of paint and tools, around the property in his pickup truck. Although a golf cart was available for plaintiffs use, he did not have enough room in a cart for all his supplies and had been given permission from the property manager to use his own truck.
3. On or about 25 May 1998, plaintiff sustained an injury to his left shoulder while unloading a paint sprayer from his pickup truck.
4. Plaintiff was treated by his family physician, Dr. Dale Caughey, on 4 May 1998. At that time plaintiff was experiencing a great deal of left shoulder pain that was, according to Dr. Caugheys records, due to lifting a vacuum cleaner. Dr. Caughey referred plaintiff to an orthopedist, Dr. Murray Seidel, who diagnosed a probable torn rotator cuff. Plaintiff also related to Dr. Seidel that his pain began when he was lifting a heavy vacuum cleaner over the side of a truck.
5. Plaintiff continued to work despite the pain resulting from the rotator cuff tear. Because he was on probationary status, plaintiff was concerned that if he missed work, it would jeopardize his employment.
6. Plaintiff continued to treat with Dr. Seidel through July 1998 and returned to Dr. Seidel in November 1998 when plaintiff could no longer tolerate the pain.
7. On 16 November 1998 Dr. Seidel surgically repaired plaintiffs rotator cuff tear. Dr. Seidel recommended physical therapy following this surgery. Plaintiff was out of work as a result of the surgery.
8. Following his surgery, plaintiff received treatment form Dr. Caughey, Dr. Seidel, New Hanover Regional Medical Center and Pro Active Physical Therapy. Dr. Seidel released plaintiff to return to work on 23 February 1999, with a restriction of no heavy lifting with the left arm.
9. On 25 May 1998, plaintiff was engaged in his normal work routine of using his truck to transport supplies around the apartment property. The apartment manager had authorized the use of plaintiffs personal truck for that purpose. Plaintiff stored his equipment and supplies in the back of the truck, and the loading and unloading of these materials was a normal activity in the performance of his job. Plaintiff did not experience anything unusual in performing the job duty of unloading the paint sprayer from the truck.
10. On 25 May 1998, plaintiff was performing his duties in his usual and customary manner, and there was no interruption of his normal work routine likely to result in unexpected consequences.
11. Plaintiffs average weekly wage was $385.63, yielding a compensation rate of $257.10.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. For an injury to be compensable, it must be shown to have resulted from an accident arising out of and in the course of employment. G.S.97-2(6); Perry v. Bakeries Co., 262 N.C. 272, 136 S.E.2d 643 (1964).
2. An "accident must involve more than merely carrying on the usual and customary duties in the normal way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Trudell v. Heating AirConditioning Co., 55 N.C. App. 89, 284 S.E.2d 538 (1981).
3. On 25 May 1998, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2(6).
4. Plaintiffs claim, therefore, is not compensable under the Act.Id.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER